1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF CALIFORNIA

7
8

9  RODNEY DEAN JACKSON,                              No. 1:17-cv-00165-GSA

10              Petitioner,

11      v.                                           **ORDER DIRECTING ENTRY OF
                                                     JUDGMENT IN FAVOR OF THE**
12  NANCY A. BERRYHILL, Acting                       **COMMISSIONER OF SOCIAL SECURITY**
    Commissioner of Social Security,                 **AND AGAINST PLAINTIFF**

13

14              Respondent.

15
16          **I.      Introduction**

17          Plaintiff Rodney Dean Jackson ("Plaintiff") seeks judicial review of a final decision of the

18  Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

19  disability insurance benefits pursuant to Title II and supplemental security income pursuant to

20  Title XVI of the Social Security Act. The matter is currently before the Court on the parties'

21  briefs which were submitted without oral argument to the Honorable Gary S. Austin, United

22  States Magistrate Judge.[1]  Docs. 17, 20 and 21. Having reviewed the record as a whole, the Court

23  finds that the ALJ's decision is based upon appropriate legal standards and is supported by

24  substantial evidence. Accordingly, the Court affirms the Commissioner's denial of benefits to

25  Plaintiff.

26

27  ──────────────────
    [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  Docs. 7 and 8.

28
                                                    1

///

**II.     Procedural Background**

Plaintiff has filed multiple prior applications for disability benefits.  AR 63.  In a hearing decision dated December 4, 2009, the Administrative Law Judge ("ALJ") determined that Plaintiff had failed to establish a change in circumstances sufficient to overcome the presumption of non-disability as articulated in SSR 97-4 and *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).  AR  63-74.

On July 24, 2012, Plaintiff again filed applications for disability insurance benefits and supplemental security income.  AR 11.  He alleged disability beginning December 5, 2009.  AR 11.  The Commissioner denied the applications initially on April 24, 2013, and upon reconsideration on December 16, 2013.  AR 11.  On January 8, 2014, Plaintiff filed a timely request for a hearing before an ALJ.  AR 11.

Administrative Law Judge, Sharon Madsen, presided over the hearing on May 28, 2015.  AR 11.  Plaintiff, represented by counsel, appeared and testified.  AR 29.  An impartial vocational expert, Cheryl R. Chandler, (the "VE") also appeared and testified.  AR 22, 29.

On July 31, 2015, the ALJ denied Plaintiff's application.  AR 11-23.  The Appeals Council denied review on November 30, 2016.  AR 1-5.  On February 3, 2017, Plaintiff filed a timely complaint seeking this Court's review.  Doc. 1.

**III.     Factual Background**

**A.     Plaintiff's Testimony and Statements**

Plaintiff (born November 12, 1969) lived in a house with his brother and a teen-aged daughter.  His daughter took care of the household chores, and an older daughter shopped for him. AR 35.  His brother took care of finances.  AR 44.

Plaintiff described his back pain as "basically constant."  AR 37.  The pain worsened the longer he stood, walked, or even lay down, although lying down brought the best relief.  AR 38.  He estimated that he could carry a little more weight than a gallon of milk for a short distance, stand for about ten minutes, walk about a block, and sit for an hour and a half.  AR 42. He did not

climb stairs.  AR 43.

Plaintiff experienced pain throughout his back although his lower back was the most painful.  AR 38, 46-47.  He also had some pain in his neck that limited his ability to turn his head. AR 38, 46-47.  Sometimes, but not always, his back pain radiated into his legs and hips.  AR 38. At the time of the hearing Plaintiff was not taking pain medication, testifying that it did not relieve his pain and made him sleep.  AR 36, 39.  Stretching was helpful.  AR 39.  He was waiting to receive another round of injections which provided some temporary relief.  AR 40. Although he had been referred for physical therapy he had been unable to arrange appointments with the therapist.  AR 48-49.

Plaintiff also experienced occasional pain and shortness of breath from his heart problem. AR 40.  He was often fatigued and generally needed to take a break after five or ten minutes of activity.  AR 41.

Plaintiff was embarrassed by his depression, which he experienced as sadness.  AR 43. He had constant bad dreams.  AR 43.  He received medication which helped him "[m]aybe a little bit."  AR 43.  He had stopped drinking alcohol.[2]  AR 45.

### B.    Medical Records [3]

Following an angiogram administered by a Kaiser cardiologist in 2006, Plaintiff was diagnosed with cardiomyopathy and had an automatic implantable cardioverter-defibrillator (AICD) implanted.  AR 396.  Following a change in employment Plaintiff was later treated by an unidentified physician at the University Medical Center cardiology clinic.  AR 396.

Cardiologist Harcharn S. Chann, M.D., treated Plaintiff beginning May 23, 2008.  AR 396-433, 556-58, 591-615.  On August 13, 2009, Dr. Chann noted that Plaintiff's cardiomyopathy had improved with treatment to a point at which he was not in obvious heart failure.  AR 406.

On August 21, 2009, Plaintiff was treated for chest pain and shortness of breath at Community Regional Medical Center.  AR 379-85.  The treating physician, Peck Ung, M.D.,

---

[2] Plaintiff's alcohol consumption had been an issue in at least one earlier application for benefits.
[3] The records summarized in this order do not include reports associated with minor routine visits or visits for unrelated acute treatment (e.g., minor skin rash).

ruled out acute myocardial infarction but was uncertain whether Plaintiff's pain might have resulted from unstable angina or gastrointestinal problems. AR 384. Dr. Ung noted mildly uncontrolled hypertension, a history of peptic ulcer disease and depression, and a possible history of sleep apnea. AR 384. Although Dr. Ung intended to admit Plaintiff for observation and consult with Dr. Chann, Plaintiff signed himself out of the hospital against medical advice. AR 407.

Following a pharmacological stress test in November 2009, Dr. Chann noted (1) an abnormal nuclear scan suggesting increased left ventricle end diastolic volume, (2) and a depressed ejection fraction of 45% at rest and 47% at stress, but (3) no significant perfusion defects to suggest ischemia. AR 410.

From January 2010 through September 2012, Plaintiff's primary care provider was Mountain Family Health Care Center.[4] AR 435-58. At his initial appointment with a nurse practitioner, Plaintiff reported that he had been diagnosed with insomnia, anxiety, schizophrenia, depression, congestive heart failure, high blood pressure, and scoliosis. AR 458. Prescription medications included Paxil, Xanax, Geodon, Ambien, Pepsid, Lisinopril, and naproxen. AR 458. Plaintiff, who was receiving psychiatric treatment, reported memory loss and worsening depression. AR 458.

On January 4, 2012, Plaintiff told nurse practitioner Neng Lee that the Vicodin prescribed for him did not relieve his back pain. AR 452. Because Plaintiff's AICD precluded his having an MRI study, Nurse Lee sent Plaintiff for CT scans of his back and neck. AR 443, 452. Nurse Lee also referred Plaintiff for physical therapy for management of chronic back pain. AR 450-51.

On January 24, 2012, radiologist Kenneth Chong, M.D., conducted CT imaging studies of Plaintiff's spine and compared them to x-rays taken November 24, 2010.[5] In his first report, the doctor considered the studies of Plaintiff's lumbar spine. AR 386-87. Dr. Chong provided detailed descriptions of (1) spinal canal and neural foraminal narrowing in Plaintiff's lumbar

---

[4] Handwritten notes from early appointments are illegible.
[5] Reports of the November 2010 x-rays are included in the record at AR 392-94.

4

///

spine and (2) "moderate levoscoliosis of the lumbar spine with the apex centered at the L2-L3 level and with an angle of 27 degrees." AR 387.

In the second report, Dr. Chong considered studies of Plaintiff's thoracic spine, which revealed multiple facet degenerative changes and severe dextroscoliosis of the lower thoracic spine with the apex centered at T8-T9 and an angle of approximately 34 degrees. AR 389. Paraspinal osteophytes appeared at T7-T8, T8-T9, T9-T10, T10-T11, and T11-T12. AR388. Dr. Chong provided detailed descriptions of multilevel neural foraminal narrowing and facet degenerative changes and degenerative changes of the costotransverse joints (left at T3 and T4; right at T4, T5, T6, T7 and T8) as well as severe right foraminal narrowing at T1-T2 and T5-T6; severe left foraminal narrowing at T9-T10; moderate-to-severe right foraminal narrowing at T2-T3 and T4-T5; moderate-to-severe bilateral neural foraminal narrowing at T11-T12; moderate right foraminal narrowing at T3-T4; and moderate left foraminal narrowing at T1-T2 and T9-T10. AR 388-89.

Dr. Chong's third report concerned CT imaging studies of Plaintiff's cervical spine. AR 390-91. The doctor observed a mild levoconvex curvature at the cervicothoracic juncture as well as degenerative changes and spinal canal narrowing at multiple levels. AR 390-91.

By February 16, 2012, Plaintiff had been excluded from the physical therapy program after missing two appointments.[6] AR 438. On March 1, 2012, Dr. Chann admonished Plaintiff for failing to return for an AICD check-up for over a year (AR 427). Following Holter monitoring on June 13, 2012, Dr. Chann noted "an abnormal rhythm suggestive of episode of short non sustained SVT." AR 429. As a result, the doctor warned Plaintiff not to skip any doses of his beta-blocker prescription. AR 429.

The record includes notes from weekly individual therapy sessions at the Fresno County Department of Mental Health from October 10, 2012 through December 3, 2012. AR 468-79. On October 10, 2012, therapist Chris Squire, LMFT, diagnosed:

---

[6] Plaintiff called to cancel the first appointment, then failed to attend the rescheduled appointment. AR 437.

|            |          |                                                                                                      |
|------------|----------|------------------------------------------------------------------------------------------------------|
| Axis I:    | 296.30   | Major Depression Unspecified; R/O Mood Disorder related to medical problems; R/O PTSD                |
|            | 300.00   | Anxiety Disorder NOS                                                                                 |
|            | V62.81   | Relational Problem NOS; R/O Phase of Life Problem                                                   |
| Axis II:   | V71.09   |                                                                                                      |
| Axis III:  | 0000     | Multiple Medical Problems                                                                            |
| Axis IV:   | 0000     | Finances, Relational, Custody, Medical                                                              |
| Axis V:    | Current GAF = 50 |                                                                                            |

AR 478.[7]

On December 19, 2012, Plaintiff advised the state agency that he was not then receiving medical care because his Medi-Cal benefits had ended.  AR 90.

On April 18, 2013, internist Rustom Damania, M.D., provided an internal medicine evaluation at the request of the state agency.  AR 483-88.  Dr. Damania wrote that he had reviewed "all medical records available," but did not identify which records were made available to him.  AR 483.  Dr. Damania diagnosed hypertension, obesity, back pain, neck pain, and degenerative disc disease by history.  AR 487.  He did not refer to Plaintiff's depression, anxiety, or scoliosis.

Plaintiff declined to do range of motion testing of his lumbar spine due to pain.  AR 485.  Dr. Damania reported that Plaintiff had a normal range of motion in his neck,  and other areas of his back and his extremities.  AR 485-86.  The doctor observed that Plaintiff "walked very slowly and took very short steps."  AR 487.  He opined:

> The claimant should be able to lift and carry 20 pounds occasionally and 10 pounds frequently.  The claimant can stand and walk six hours out of an eight hour work day with normal breaks. The claimant can sit six hours out of an eight hour day.  Objectively there is no need for an assistive device but claimant subjectively

[7] The Global Assessment of Functioning (GAF) scale is a rating from 0 to 100 and considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *Diagnostic and Statistical Manual of Mental Disorders*, 32-35 (4th ed. American Psychiatric Association 1994). A GAF of 41-50 corresponds to serious symptoms or a serious impairment in social, occupational, or school functioning. *Id.*

1    insists on using a cane.  Objectively no postural limitations but
2    claimant declines range of motion.  No manipulative limitations.
     No relevant visual or communicative impairments.

3        AR 487.

4        Plaintiff received primary health care at Clinica Sierra Vista beginning February 13, 2013.

5    AR 499-564.  At a May 2013 appointment, Gita Ramesh, M.D., observed inappropriate mood or

6    affect, noting that Plaintiff was anxious and wore sunglasses.  AR 493.  Dr. Ramesh also noted

7    that because he had no medical insurance, Plaintiff had not received proper follow up for mental

8    health problems including anxiety, agoraphobia and possibly schizophrenia, or for cardiac

9    problems including cardiomyopathy and AICD/pacemaker.  AR 493.

10        Plaintiff returned for treatment at Fresno County Mental Health with an intake interview

11   on October 24, 2013.  AR 579-84.  The initial plan of weekly cognitive behavioral therapy to last

12   six months was intended to reduce Plaintiff's depressed mood and increase his hours of sleep.

13   AR 579.  Janice L. Anderson, LCSW, diagnosed:

14       Axis I        300.4        Dysthymia
                       300.00       Anxiety Disorder NOS
15
16       Axis II       V71.09       No Diagnosis

17       Axis III                   Poor Health

18       Axis IV                    poor health, custody of 2 young daughters, unemployed,
                                    financial problems, lives in his brother's home
19
20       Axis V                     Current GAF = 55; Past year = 54

21       AR 582.[8]

22        Plaintiff attended weekly therapy sessions.  See AR 566-78.

23        Plaintiff saw psychiatrist Sarah Morgan, M.D., at Clinica Sierra Vista for medication

24   management and psychotherapy on July1 and 24, September 10, October 13 and November 13,

25   2014.  AR 519-23, AR 524-27, 528-32, 533-37, 538-44.  In these sessions, Plaintiff reported

26   _____
     [8] A GAF of 51-60 corresponds to moderate symptoms or moderate difficulties in social, occupational, or school
27   functioning. *Diagnostic and Statistical Manual of Mental Disorders* at 32-35.

28
                                              7

difficulty functioning as well as anxious/fearful thoughts, thoughts of death and suicide, depressed mood, difficulty concentrating, difficulty falling asleep, fatigue, diminished interest or pleasure, excessive worry, feelings of guilt and indecision. Dr. Morgan observed that Plaintiff was wearing sunglasses, had a defensive attitude, was depressed and anxious, had constricted affect, a circumstantial thought process and slowed thinking, a delusion of persecution, and an impaired ability to make reasonable decisions. AR 527. The doctor diagnosed agoraphobia with panic disorder (300.21), major depressive disorder, recurrent, severe (296.34), and generalized anxiety disorder (300.02). AR 520-21, 525.

Dr. Morgan opined that Plaintiff's generalized anxiety disorder required a higher level of care than Clinica Sierra Vista could provide. AR 525. She referred Plaintiff to the Urgent Care Wellness Center or House Psychiatric Care, continued medication to treat symptoms of anxiety and depression, and encouraged Plaintiff to try other medication regimens. AR 525.

Beginning in December 2014, Plaintiff received treatment at House Psychiatric Clinic. AR 586-90. He responded well to Brintellix (Vortioxetine HBr), an antidepressant. AR 589.

On March 4, 2015, Plaintiff met with Amitasha Mann, M.D., to review his lab tests and x-rays of his back. AR 507. Plaintiff complained of depression and considerable back pain. AR 507. Dr. Mann diagnosed (1) hypertension, (2) prediabetes, (3) degenerative joint disease of the lower back evidenced by severe dextrocurvature and mild-to-moderate thoracolumbar degenerative changes, (4) idiopathic scoliosis requiring an interventional pain management referral, and (5) back pain. AR 511.

**IV.  Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability

status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.    **The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment of impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927; 416.929.

9

1       Specifically, the ALJ is required to determine: (1) whether a claimant engaged in

2 substantial gainful activity during the period of alleged disability, (2) whether the claimant had

3 medically determinable "severe impairments," (3) whether these impairments meet or are

4 medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,

5 Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to

6 perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs

7 existing in significant numbers at the national and regional level.  20 C.F.R. §§ 416.920(a)-(f).

8       In addition, when an applicant has one or more previous denials of applications for

9 disability benefits, as Plaintiff does in this case, he or she must overcome a presumption of

10 nondisability. The principles of *res judicata* apply to administrative decisions, although the

11 doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen,* 844

12 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen,* 844 F.2d 664, 666 (9th Cir. 1988).

13       Social Security Acquiescence Ruling ("SSR") 97–4(9), adopting *Chavez,* applies to cases

14 such as this one involving a subsequent disability claim with an unadjudicated period arising

15 under the same title of the Social Security Act as a prior claim in which there has been a final

16 administrative decision that the claimant is not disabled. A previous final determination of

17 nondisability creates a presumption of continuing nondisability in the unadjudicated period.

18 *Lester v. Chater,* 81 F.3d 821, 827 (9th Cir. 1995). The presumption may be overcome by a

19 showing of changed circumstances, such as new and material changes to the claimant's residual

20 functional capacity, age, education, or work experience. *Id.* at 827–28; *Chavez,* 844 F.2d at 693.

21     **VI.**    **Summary of the ALJ's Decision and the Issues Presented**

22       The ALJ first determined that "new or material evidence relevant to the unadjudicated

23 period from to the present not only supports the presumption of continuing nondisability but also

24 establishes a more expansive residual functional capacity."  AR 11.  Then, using the Social

25 Security Administration's five-step sequential evaluation process, the ALJ determined that

26 Plaintiff did not meet the disability standard.  AR 11-23.

27 ///

28

1    The ALJ found that Plaintiff had not engaged in substantial gainful activity since

2    December 5, 2009 (the alleged onset date).  AR 13.  Plaintiff's severe impairments included (1)

3    thoracolumbar scoliosis and degenerative joint disease, (2) cervical degenerative joint disease, (3)

4    obesity, (4) history of cardiomyopathy status post AICD placement, (5) major depressive

5    disorder, and (6) generalized anxiety disorder.  AR 13-14.  The severe impairments did not meet

6    or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

7    (20 C.F.R. §§ 416.920(d); 416.925; and 416.926).  AR 14-15.  The ALJ found that Plaintiff

8    retained the residual functional capacity to perform the full range of light work as defined in 20

9    C.F.R. §§ 404.1567(b) and 416.967(b), including lifting and carrying 20 pounds occasionally and

10   ten pounds frequently; standing and walking for six to eight hours; and sitting for six to eight

11   hours in an eight-hour workday.  AR 15.  Plaintiff could occasionally stoop, crouch, crawl, climb

12   and kneel.  AR 15.  He must avoid concentrated exposure to cold, wetness and hazards such as

13   unprotected heights and dangerous moving machinery.  AR 15.  He was limited to simple routine

14   tasks.  AR 15.

15        The ALJ relied on the testimony of a vocational expert to find that Plaintiff was unable to

16   perform his past relevant work as a service clerk and order clerk.  AR 21.  Plaintiff however was

17   able to perform light unskilled work such as (1) housekeeping (DOT No. 323.687-014) (391,000

18   jobs nationally); (2) counter clerk (DOT 249.366-010) (116,000 jobs nationally); and (3) marker

19   (DOT No. 369.687-026) (134,000 jobs nationally).  AR 21-22.  Accordingly, the ALJ found that

20   Plaintiff was not disabled.  AR 22.

21   **VII.    The ALJ Provided Clear and Convincing Reasons for Rejecting
         Plaintiff's Pain Testimony Concerning His Back Pain**
22
         Plaintiff contends that the ALJ erred in concluding that Plaintiff's testimony about the
23
     back pain associated with his scoliosis was not credible.  Defendant counters that the ALJ
24
     appropriately rejected Plaintiff's testimony as not fully supported by the record.  After reviewing
25
     the record as a whole and applicable law, the Court finds that sufficient evidence supports the
26
     ALJ's conclusion.  Even if the Court might have interpreted the evidence differently, because
27

28
                                                11

1  evidence in the record could reasonably support either outcome, Defendant's interpretation must

2  stand. *See Flaten v. Sec'y, Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

3     An ALJ is responsible for determining credibility, resolving conflicts in medical

4  testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

5  His or her findings of fact must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903

6  F.2d 1229, 1231 (9th Cir. 1990). To determine whether the ALJ's findings are supported by

7  substantial evidence, a court must consider the record as a whole, weighing both the evidence that

8  supports the ALJ's determination and the evidence against it. *Magallanes v. Bowen*, 881 F.2d

9  747, 750 (9th Cir. 1989).

10    A claimant's statement of pain or other symptoms is not conclusive evidence of a physical

11  or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p, 2017 WL

12  5180304 (Oct. 25, 2017). "An ALJ cannot be required to believe every allegation of [disability],

13  or else disability benefits would be available for the asking, a result plainly contrary to the [Social

14  Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In this case, the ALJ deemed

15  Plaintiff's allegations of pain to be subjective testimony that rendered Plaintiff's credibility a

16  material factor. AR 19.

17    An ALJ performs a two-step analysis to determine whether a claimant's testimony

18  regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014

19  (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must

20  produce objective medical evidence of an impairment that could reasonably be expected to

21  produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80

22  F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's

23  "medically determinable impairments could reasonably be expected to produce the alleged

24  symptoms." AR 17. The ALJ did not find Plaintiff to be malingering.

25    If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may

26  reject the claimant's testimony regarding the severity of his symptoms only if he makes specific

27  findings that include clear and convincing reasons for doing so. *Garrison*, 759 F.3d at 1014-15;

28

*Smolen*, 80 F.3d at 1281. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. *See also* Social Security Ruling ("SSR") 96-7p[9] (stating that an ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight"). It is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

Using Defendant's boilerplate language, the ALJ wrote that Plaintiff's "statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible for the reasons explained in the decision." AR 17. She rejected Plaintiff's testimony of limited daily activities, first stating that Plaintiff's testimony "could not be objectively verified with any reasonable degree of certainty." AR 17. The ALJ confined her analysis solely to medical evidence. She rejected as inconsistent with the medical evidence a letter (AR 362) from

---

[9] Social Security Ruling 96-7p was superseded by Ruling 16-3p, effective March 28, 2016. See 2016 WL 1020935, *1 (March 16, 2016); 2016 WL 1131509, *1 (March 24, 2016) (correcting SSR 16-3p effective date to March 28, 2016); 2017 WL 5180304, *2 (Oct. 25, 2017) (further correcting SSR 16-3p). Although the second step has previously been termed a credibility determination, recently the Social Security Administration ("SSA") announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." See SSR 16-3p, 2016 WL 1020935 at *1 ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."). Social Security Rulings reflect the SSA's official interpretation of pertinent statutes, regulations, and policies. 20 C.F.R. § 402.35(b)(1). Although they "do not carry the force of law," Social Security Rulings "are binding on all components of the [SSA]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted).

As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (Posner, J.) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.") SSR 16-3p became effective after the issuance of the ALJ's decision and after the Appeals Council had denied review in the instant case. When a federal court reviews the final decision in a claim, the district court is to apply the rules in effect when the decision was issued by the agency. SSR 16-3p, 2017 WL 5180304 at *1 (Oct. 25, 2017).

1  Plaintiff's former employer Chris Carr, president of Fresno Motorsports, that Plaintiff could not

2  perform his job at the front desk because Plaintiff's debilitating pain made him unable to sit for

3  more than an hour or two.  AR 20.  The ALJ gave only some weight to the third party function

4  report submitted by Plaintiff's adult daughter, Cicilee Jackson, because Ms. Jackson lacked

5  medical training and was not a disinterested third party.  AR 20.

6       Because a "claimant's subjective statements may tell of greater limitations than can

7  medical evidence alone," an "ALJ may not reject the claimant's statements regarding her

8  limitations merely because they are not supported by objective evidence." *Tonapetyan v. Halter*,

9  242 F.3d 1144, 1147-48 (2001) (quoting *Fair*, 885 F.2d at 602 (9th Cir. 1989).  *See also Bunnell*,

10  947 F.2d at 34 (holding that when there is evidence of an underlying medical impairment, the

11  ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely

12  because they are unsupported by medical evidence).  "Congress clearly meant that so long as the

13  pain is *associated* with a clinically demonstrated impairment, credible pain testimony should

14  contribute to a determination of disability."  *Id.* at 345 (internal quotation marks and citations

15  omitted).

16       In assessing the claimant's credibility, the ALJ may use "ordinary techniques of

17  credibility evaluation," considering factors such a lack of cooperation during consultative

18  examinations, a tendency to exaggerate, inconsistent statements, an unexplained failure to seek

19  treatment, inconsistencies between the testimony and conduct; and inconsistencies between daily

20  activities and the alleged symptoms.  *Tonapetyan,* 242 F.3d at 6; *also see Smolen*, 80 F.3d at

21  1284; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (including as factors claimant's

22  reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily

23  activities, work record, and testimony from physicians and third parties about the nature, severity,

24  and effect of the alleged disabling symptoms).  "If the ALJ finds that the claimant's testimony as

25  to the severity of her pain and impairments is unreliable, the ALJ must make a credibility

26  determination with findings sufficiently specific to permit the court to conclude that the ALJ did

27  not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958.  "[A] reviewing court

28

1    should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's

2    allegations of disabling pain." *Bunnell*, 947 F.2d at 346.  On the other hand, if the ALJ's

3    credibility finding is supported by substantial evidence in the record, courts "may not engage in

4    second-guessing." *Thomas*, 278 F.3d at 959.

5            In making her determination, the ALJ analyzed Plaintiff's daily activities as a whole,

6    considering all of Plaintiff's severe impairments.  AR 16-17.  With regard to Plaintiff's back pain,

7    she found that Plaintiff retained a driver's license and drove, needed rest after brief activity and

8    did not climb stairs.  AR 16.  On the other hand, the ALJ found that Plaintiff had constant low

9    back pain that radiated to his hips and worsened when standing or walking; needed help putting

10   on his shoes; lay down, slept and read; had neck pain that impaired his turning his head and

11   impeded driving; and got no relief from pain medication, which simply made him sleepy.  AR 16.

12   Finally, she relied on Dr. Damania's opinion that Plaintiff 'could perform a full range of work at

13   the light exertional level.  AR 18.

14           The ALJ also noted that Plaintiff was not always compliant with medical treatment, citing

15   Plaintiff's failure to report for follow-up appointments with his cardiologist (AR 604), to take

16   high blood pressure medication prior to a blood pressure and anxiety check by his primary care

17   physician (AR 453), and to arrange for a mental health evaluation (AR 561).  AR 19.  Although

18   Plaintiff argues that these omissions are not fair evidence of noncompliance with treatment, a

19   pattern of noncompliance runs throughout the record including Plaintiff's failing to take

20   medication on other occasions, missing his physical therapy appointment (AR 438), neglecting

21   required maintenance checks of his AICD (AR 427), and checking himself out of the hospital

22   against doctor's orders (AR 407).

23           Plaintiff contends that the Defendant erred in failing to obtain a consultative opinion from

24   an orthopedist who could have more meaningfully opined on the impact of Plaintiff's multiple

25   spinal curvatures.  He emphasizes that Dr. Damania lacked specific information on Plaintiff's

26   multiple spinal curvatures and that Dr. Vinh and the state agency mistakenly considered

27   Plaintiff's thoracic curvature to be moderate rather than severe. Plaintiff provides no evidence

28
                                                    15

1 from which the Court can determine what information was presented to Dr. Damania. Further,

2 despite the agency's apparent misstatements, the ALJ fully summarized medical reports of

3 Plaintiff's back impairments, including the diagnosis of severe dextroscoliosis at the thoracic

4 level. AR 17.

5   A claimant generally bears the burden of proving his or her entitlement to disability

6 benefits. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); 20 C.F.R § 404.1512(c).

7 However, Social Security hearings are not adversarial proceedings. *DeLorme v. Sullivan*, 924

8 F.2d 841, 849 (9th Cir. 1991). Whether or not the claimant is represented by counsel, the ALJ

9 "must inform himself about the facts relevant to his decision." *Heckler v. Campbell*, 461 U.S.

10 458, 471 n. 1 (1983). "The ALJ has a special duty to fully and fairly develop the record and to

11 assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.

12 1983). *Accord Tonapetyan*, 242 F.3d at 1150; *Smolen*, 80 F.3d at 1288. However, the ALJ's

13 obligation to obtain additional evidence is triggered only when the evidence from the treating

14 medical source is inadequate to make a determination as to the claimant's disability. *Thomas*, 278

15 F.3d at 958; *Tonapetyan*, 242 F.3d at 1150 (holding that ALJs have a duty fully and fairly to

16 develop the record when the evidence is ambiguous or "the record is inadequate" to allow for

17 proper evaluation of the evidence). When the ALJ finds support in the record adequate to make a

18 determination regarding the claimant's disability, he does not have a duty to secure an additional

19 consultative opinion. *Bayliss v. Barnhart*, 427 F. 3d 1211, 1217 (9th Cir. 2005). Plaintiff

20 provides no evidence from which the Court could conclude that an orthopedist would have

21 rendered a different opinion.

22   Finally, even if an error concerning Plaintiff's credibility occurred, the record suggests

23 that it was likely harmless. In the December 2009 hearing decision, the ALJ included "chronic

24 pain" among Plaintiff's severe impairments. AR 66. Plaintiff's scoliosis was among the

25 disorders contributing to that pain. According to the 2009 hearing decision, a physical therapist

26 had reported in April 2007 that Plaintiff's scoliosis was unremarkable except when he sat with a

27 flexed trunk. AR 69. Analysis of CT imaging of Plaintiff's lumbar spine in June 2007, noted that

28

16

Plaintiff's levoscoliosis had not changed in degree since July 2005. AR 70. The 2009 hearing decision also noted that Plaintiff's scoliosis had not worsened in years. AR 72.

The 2009 findings are similar to the November 2012 analysis of CT images in which Dr. Chong opined that the angles of Plaintiff's scoliosis had not significantly changed since the October 2010 x-rays. AR 386, 388. Plaintiff does not contend that the degree of his scoliosis worsened between the earlier imaging studies and November 2010.

The Court will not second guess the ALJ's assessment of Plaintiff's credibility.

### VIII.   **Conclusion and Order**

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff, Rodney Dean Jackson.

IT IS SO ORDERED.

Dated:   **November 6, 2018**                **/s/ Gary S. Austin**
                                                                          UNITED STATES MAGISTRATE JUDGE